**EAGLE PICHER LEAD CO. v. ROBINSON PACKER CO.**

No. 217.

Circuit Court of Appeals, Tenth Circuit.

Sept. 23, 1930.

Walter F. Murray, of Cincinnati, Ohio (Philip Kates, of Tulsa, Okl., and Murray & Zugelter, of Cincinnati, Ohio, on the brief), for appellant.

W. D. Humphrey, of Tulsa, Okl. (W. J. Campbell, of Tulsa, Okl., on the brief), for appellee. .

Before LEWIS, COTTERAL, and McDERMOTT, Circuit Judges.

LEWIS, Circuit Judge.

Appellant as assignee of the inventors is the owner of Letters Patent (1,609,153) for an oil well plug, a device for shutting off the inflow of water at the bottom of the well. The application was made September 2, 1924, and the patent issued November 30, 1926. The specifications say this:

"Numerous means have been devised in an endeavor to accomplish this plugging in an efficient and pertinent manner. The device of our invention comprises an elongated tubular wire mesh container having a closed and reduced lower end. In the wire mesh container is contained a mass of lead wool which is to be used for sealing the bottom of the well. The completed plug is lowered to the bottom of the well and is released after which a tamping tool is repeatedly raised and lowered on to the plug resulting in breaking down and crushing of the wire mesh and forcing the spongy lead wool into all the crevices and irregularities and pores surrounding the bottom of the well."

There are four claims, in substance alike, the fourth being the more elaborate and illustrating the manner of use, thus:

"4. An oil well plug comprising an elongated tubular wire mesh container adapted to disintegrate under blows of a tamping tool and a filler of spongy lead wool in the container adapted to be tamped into a solid plug interwoven with the wire of the broken container."

Appellant charged appellee with infringement "By making, using and selling parts of said patented invention to other persons, with the intention that said other persons should combine said parts with other parts of said invention, so as to make oil well plugs, in which the invention of said Letters Patent No. 1,609,153 were embodied." Appellee denied the charge and further pleaded in its answer that the device was not new or novel, did not involve invention and had been in public use in this country for more than two years before application.

At the final hearing Mr. Carter, one of the two inventors, testified on cross-examination: "I admit that before I had the idea of devising a thing like our alleged patent that I knew that oil well operators were using lead wool as a plugging element." He further said he knew this four to six months before he conceived the idea of making the wire container, that "We were told they had used a sheet metal container in connection with the lead wool but I don't recall that I had ever seen one that had been used in the field.

* * * When I ascertained that sheet metal had been used as a device for letting the plugging element down into a well I learned it was in the shape which the patent called for, angular or round. I learned that it extended up and down like the stove pipe. I learned that it was closed at the bottom end so as to hold the contents. * * * We have been making the containers since the spring of 1923. They are shipped out, usually in cardboard or fiber board cartons. The lead wool is shipped out in fifty pound gunny sacks." He had testified on direct examination as appellant's witness: "In other words, I was told that lead wool as it had been used was not entirely satisfactory and did not effect a complete shut off, presumably because a sheet metal container had been used, and our idea was to design a container that would be ideal to be used in connection with lead wool, and it was perfectly natural we would hit upon a container that would permit the wool to ooze out between the container itself. And so early in January or February, 1923, we made some tests up there with small size containers, and found out that the lead wool would pound out through the meshes of the wire, and shortly after that date we began offering that product to the trade. When I got this idea that the lead wood would force out through wire mesh container of this kind I turned to our factory superintendent who was in charge of production of all products there and gave the idea to him and asked him to work out the practical end of it, which he did, and at the same time I asked him to make some tests and he was in charge of those tests. This man is Mr. Allen R. Best." Mr. Best, the other inventor, did not testify. From this testimony the conclusion is unavoidable that Carter and Best, inventors, were not the first discoverers of the use of lead wool in plugging oil wells. Indeed, Mr. Carter's testimony strongly indicates that he claimed only the wire container as the invention. The practice is not to put the lead wool into the wire container when they are sent out to the trade, but to pack and send them separately. The lead wool is put into the container at the well as needed.

For appellee, a witness testified that he, while dressing tools at an oil well in Indiana in 1900 or 1901, helped to make a wire container out of mesh wire and used it to let lead wool or lead shavings, or steel shavings, from a machine lathe into the well to plug water off of the bottom, that the first one he saw was made on the derrick floor and he had seen that done from that time on. Later in Oklahoma between the years 1905 and 1908 he used the same kind of container in which to put lead shavings or cuttings to plug a named gas well in a named locality, and since then he had heard of a great many people using the same sort of a mesh bag for the same purpose. He had seen screen wire, ordinary door screen wire, used, into which cuttings of lead and steel and oakum were put.

Another witness experienced in drilling oil wells testified he made a container out of poultry wire on the derrick floor at a well in Oklahoma in 1916, into which he put oakum and putty to plug off the water, and he knew of neighboring lessees doing the same thing. It shut off the water. And he had done the same thing many times.

Another witness with long experience in plugging oil wells in Kansas testified that to his knowledge wire containers had been in use for twenty years for lowering different kinds of plugging materials.

An oil well driller testified that he had used a wire container as early as 1904 in Ohio, and later in Oklahoma in 1916 and 1917, that he filled it with lead and steel cuttings picked up under the lathe, and at times he also put in oakum and putty.

Another witness whose experience in the oil business extended from 1896 into 1920 testified to the use of wire containers made of screen wire, mesh wire and chicken wire. At times two wraps of the wire would be made in order to get the mesh smaller.

There was no contradiction of this proof that wire containers, and also lead wool, were in use long prior to February, 1923, when the inventors claim to have made their discovery. And although the containers with closed lower ends and the lead wool were not manufactured and put up for the special purpose until after the application for patent, it is clear beyond all doubt or question that Carter and Best were not the first to discover their device and that it had been in public use in this country long prior to the statutory bar.

The decree dismissing the bill on final hearing is

Affirmed.